```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  7/2/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                  :
OMAR MARTINEZ,                       :

            Petitioner,          :         23-cv-1281 (LJL)

       -v-                    :         OPINION AND ORDER

SUPERINTENDENT MARK T. MILLER,  :

            Respondent      :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Respondent Superintendent Mark T. Miller moves to dismiss as untimely the petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by Petitioner Omar Martinez. Dkt. No. 13.

      For the following reasons, the motion to dismiss is granted.

## BACKGROUND

      Petitioner was convicted in New York State Supreme Court, Bronx County, after a jury trial on charges of second-degree murder in violation of New York Penal Law § 125.25(1) and criminal possession of a weapon in the fourth degree in violation of New York Penal Law § 256.01(2). He was sentenced on January 25, 2016 to an aggregate term of 25 years to life in prison. His conviction was affirmed by the Appellate Division on June 25, 2020. *See People v. Martinez*, 124 N.Y.S.3d 541 (1st Dep't 2020). Leave to appeal was denied by the New York Court of Appeals on October 22, 2020. *See People v. Martinez*, 158 N.E.3d 549 (N.Y. 2020).

      Petitioner originally filed a petition for writ of habeas corpus over two years later, on or about January 18, 2023.[1] Dkt. No. 2. On March 7, 2023, Petitioner filed an amended petition.

---

[1] The "prison mailbox" rule generally states that an inmate's filing date is the date he gave his legal mail to prison authorities, not the date that it was filed on the docket. *See Noble v. Kelly,* 246

Dkt. No. 10 (collectively with Dkt. No., 2, the "Petition").[2]  In his amended petition, Martinez raises a number of challenges to his conviction, including (1) that cell site location information was obtained in violation of the trial court's suppression order, (2) that lay testimony was improperly admitted at trial regarding the cell site location data, (3) that DNA reports were received in evidence in violation of his Confrontation Clause rights, (4) that he was improperly denied a hearing on his claim that identification evidence was unduly suggestive, (5) that the prosecution engaged in misconduct in its summation and by its failure to produce *Brady* material, (6) that he received ineffective assistance of counsel, and (7) that his right to be present for all material stages of the proceedings was violated when he was excluded from the sidebar questioning of the jury. *Id*.

On March 6, 2023, Petitioner sent a letter to the Court asking for an extension of time or a postponement of the adjudication of his Petition so that he could exhaust state remedies. Dkt. No. 9.  On March 9, 2023, Petitioner sent a letter to the Court asking to withdraw his application so that he could first exhaust state remedies before filing another petition in federal court. Dkt. No. 11.

---

F.3d 93, 97 (2d Cir. 2001) (per curiam).  Except for the 440.10 motion at issue, the Court takes the date on Petitioner's filing, not the date the Clerk of Court posted the document on the ECF system, as the date of submission to this Court.

[2] Habeas petitions may be amended or supplemented as provided in the rules of procedure applicable to civil actions.  *See* 28 U.S.C. § 2242.  Rule 15(c)(2) of the Federal Rules of Civil Procedure states that an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim that arose out of the same conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. Fed. R. Civ. P. 15(c)(2).  Therefore, consistent with the AEDPA's one-year statute of limitations, amendments to habeas petitions do not relate back when they "assert[] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 649 (2005). Because the Court determines that Petitioner's first petition was not timely because his 440.10 motion did not toll the statute of limitations, the Court need not consider whether Petitioner's amended petition relates back to the original petition.  Therefore, for ease for reference, the Court refers to Petitioner's original and amended petition collectively as the "Petition."

On March 30, 2023, the Court issued an Order directing Respondent to respond to Petitioner's letter, which the Court construed as a request to stay the action pending the exhaustion of state court remedies. Dkt. No. 12. The Court directed Respondent as follows:

> Respondent is directed to respond to Petitioner's request on or before April 28, 2023, and address whether the Court should stay, rather than dismiss, Petitioner's mixed petition, how much time remains on the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and whether the AEDPA's statute of limitations is currently tolled.

*Id.*

Respondent filed a motion in response to the motion to stay and a cross-motion to dismiss on April 28, 2023, arguing that the Petition was time-barred. Dkt. No. 13. On June 14, 2023, Petitioner filed a declaration in opposition to the motion to dismiss and a motion to stay the Petition pending exhaustion in state court of his unexhausted claims. Dkt. Nos. 17–18. Respondent filed a reply affidavit on July 20, 2023. Dkt. No. 19. On August 17, 2023, Petitioner field a reply declaration in response to Respondent's reply and in further support of his cross-motion. Dkt. Nos. 20–21.

On March 8, 2024, the Court issued an order for Petitioner to show cause why the Court should not conclude that his Petition was untimely. Dkt. No. 22. On March 25, 2024, Petitioner requested a hearing. Dkt. No. 23. After an adjournment requested by Respondent, the Court held a hearing on August 12, 2024 and a continued hearing on September 4, 2024. *See* Minute Entries for August 12, 2024 and September 4, 2024.[3]

Respondent filed a post-hearing brief on November 15, 2024. Dkt. No. 47. Petitioner filed a response on February 8, 2025. Dkt. No. 53. Respondent submitted a reply brief on March 14, 2025. Dkt. No. 56.

---

[3] Petitioner provided consent to appearing remotely at the hearing. Dkt. No. 33.

3

## THE EVIDENCE AT THE HEARING

Petitioner's state court judgment became final on March 21, 2021, when Petitioner's time to file a petition for a writ of certiorari in the United States Supreme Court expired. Absent tolling, the time for Petitioner to file a petition under 28 U.S.C. § 2254 elapsed one year later, on March 21, 2022. *See* 28 U.S.C. § 2244(d)(1).[4] The Petition was not placed in the prison mailing system until January 18, 2023, at the earliest. Dkt. No. 2 at 14. The time to file a petition for writ of habeas corpus under 28 U.S.C. § 2254, however, is tolled if a state post-conviction motion is filed within one year of the date when the conviction has become final. *See Fernandez v. Artuz*, 402 F.3d 111, 114 (2d Cir.), *cert. denied*, 546 U.S. 816 (2005). Under the "prison mailbox rule," a state postconviction motion is deemed filed on the date that the petitioner "delivered it to prison authorities for mailing." *Id.* Petitioner claimed that he filed a motion for state post-conviction relief under N.Y. Crim. Proc. Law § 440.10 on March 21, 2022, tolling the time for his § 2254 petition. Dkt. No. 2 at 3. Respondent argues that the time to file the Petition was not tolled because, while Petitioner ultimately filed a motion for post-conviction relief, he did not do so until May 2022, after the one-year limitations period under §2244(d)(1) had expired. Dkt. No. 13 at 8.[5] The question for the hearing was whether Petitioner filed his 440.10 motion on or before March

---

[4] Under Section 2244(d)(1), the limitations period runs from the latest of "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence." 28 U.S.C. § 2244(d)(1). Subsections (B), (C), and (D) are not applicable here.

[5] Respondent's memorandum of law refers to a date of May 2, 2020. Dkt. No. 13 at 8. The Court understands that to be a typographical error.

21, 2022, as he claimed, or whether, as Respondent claimed, it was not filed until May 2022 at the earliest.

Petitioner claimed that he originally placed his 440.10 motion in the prison mailbox on March 21, 2022, but the prison failed to properly mail it then, such that he was forced to remail it in May 2022. In support of his argument, Petitioner relies on his notice of motion to proceed as a poor person pursuant to N.Y. C.P.L.R. 1101(f), 1102, and his notice of motion to vacate judgment pursuant to N.Y. Crim. Proc. Law § 440.10. Dkt. No. 13-1 at 9–10. The notice of motion to proceed as a poor person is dated March 16, 2022 at Stormville, New York and the notice of motion to vacate judgment is dated March 21, 2022. *Id.* The last page of the 440.10 motion likewise bears Petitioner's signature and a notary stamp reflecting that it was sworn before a notary on March 21, 2022. *Id.* at 16. The 440.10 motion was accompanied by an affidavit of service signed by Petitioner, stating that Petitioner served the Court and the District Attorney's office by placing the motion in a United States Postal Service mailbox located at Green Haven Correctional Facility in Stormville, New York on March 16, 2022. *Id.* at 14. The affidavit of service bears a notary stamp, reflecting that it was sworn to by a notary public on March 16, 2022. *Id.*

Petitioner also testified at the hearing before the Court on August 12, 2024. Dkt. No. 45. Petitioner testified that he completed the motion on March 16, 2022, but that the motion was mailed out on March 21, 2022. *Id*. at 4:22–25. He explained that, after completing the motion, he misplaced the original notarized page and had to wait until March 21 to retype it, have it notarized, and put it in the mailbox. *Id.* at 4:25–5:6; 9:12–21. Petitioner explained that he had to wait until March 21 because, as a result of COVID restrictions, he was not allowed to go to the library either on March 17 or any of the other days on the week that included March 16. *Id.* at 5:1–4. On March 21, 2022, Petitioner went back to the library, signed the motion, had it notarized, and, after signing

5

a disbursement authorization for the payment of postage, submitted the motion to the mailbox. *Id.* at 9:18–20, 10:7–10. Petitioner also testified that an officer signed the disbursement on March 21, 2022, but he could not recall the name of the officer who signed the disbursement. *Id.* at 24:2–21. Petitioner explained that he did not have time to complete a new affidavit of service with the March 21 date before the deadline for mail on March 21, so he used the affidavit of service from March 16. *Id.* at 9:20–23.

Petitioner further testified that he did not receive a pink slip that he was supposed to receive for the disbursement that he submitted with his legal mail and, as a result, he submitted a grievance. *Id.* at 5:7–12. He did not receive a response, so two weeks later, on April 25, 2022, he filed a second grievance, making a copy of the grievance for himself. *Id.* at 5:13–16. Petitioner offered a copy of an Incarcerated Grievance Program Complaint Form bearing the date April 25, 2022, signed by himself in support of that testimony. Dkt. No. 39 at 4. The complaint form states under the heading "Description of Problem": "I did not received [sic] my pink slip of my disbursements that was mailed along with my legal mails, dated March 21, 2022." *Id.* The "Action Requested By Grievant" is "I request my pink slip from my disbursement dated March 21, 2022." *Id.* The document is not signed by a corrections officer. *Id.*

According to Petitioner, his legal mail was returned to him on April 29, 2022, by a corrections officer who claimed that the mail had not been sent because the prison could not find his disbursement and because the weight of the mail exceeded the weight limit. Dkt. No. 45 at 5:16–29.[6] The officer told Petitioner that he should mail each of the documents separately. *Id.* at

---

[6] The officer would not tell Petitioner his name but said that his name is "on file." Dkt. No. 45 at 6:4–5.

6: 13–14. As a result, Petitioner mailed the motion to the Court on May 2, 2022 and the motion to Respondent on May 10, 2022. *Id.* at 6:13–17.

Respondent challenged Petitioner's account. First, it offered evidence that Petitioner did not request a disbursement for mailing the 440.10 motion until May 2022 and that the motion was not picked up by the United States Postal Service from Green Haven and delivered to the Court and to Respondent until May 2022. Respondent's evidence included Petitioner's Department of Corrections and Community Supervision Disbursement requests, dated May 2, 2022 and May 10, 2022. Dkt. No. 13-1 at 18. The May 2, 2022 disbursement request resulted in a deduction of $13.15 from Petitioner's account to purchase postage for "certified mail" to the Bronx Supreme Court and bears the signature of two approvers, dated May 2, 2022 and May 4, 2022. *Id.* The May 10, 2022 request resulted in the deduction of $6.35 from Petitioner's account to purchase postage for legal mail to the Bronx District Attorney's Office and bears the signatures of two approvers, dated May 10, 2022 and May 12, 2022. *Id.* Those figures correspond precisely with the postage required to send the 440.10 motion to the Bronx District Attorney's Office. The envelope received by the District Attorney's Office which contained Petitioner's 440.10 motion had five postage stamps and reflected that $6.35 in postage was paid on May 12, 2022. Dkt. No. 13-1 at 20. The envelope is postmarked May 13, 2022. *Id.* The United States Postal Service Tracking Statement reflects that the envelope was picked upon May 13, 2022 and delivered on May 16, 2022. *Id.* at 22.

Respondent also relied on Petitioner's Department of Correctional Services Inmate Statement for the month of March 2022 which showed that Petitioner had over $3,000 in his account at the beginning of the period and over $2,800 at the end of the period, with disbursements

7

only for the commissary and for media, demonstrating both that Petitioner had the funds to pay for postage and that he did not pay for postage in March 2022. *Id.* at 24.

Respondent challenged Petitioner's testimony as untrustworthy. In response to Respondent's motion to dismiss, Petitioner originally relied on a claim of ineffective assistance of counsel. On cross-examination, he was directed to his signed opposition to the motion to dismiss. *See* Dkt. No. 18. In that briefing, he did not claim to have filed his 440.10 motion within the one-year period after his conviction became final or deny that his Petition was untimely. Rather, he blamed his failure to file timely on ineffective assistance of counsel and claimed that he did not have direct access to the law library. He stated:

> PETITIONER CLAIMS EXTRAORDINARY CIRCUMSTANCES MERITED EQUITABLE TOLLING OF LIMITATIONS PERIOD FOR HABEAS CLAIMS UNDER (AEDPA). 1. Appellate counsel was ineffective for not informing petitioner of filing his Federal Habeas claims until after his US Supreme Court Certiorari Petition expired. (See exhibit A), Nickels v. Conway, 2021 WL 1592929, 28 U.S.C.A §2254(b)(1)(ii). Appellate counsel failed to ensure timely filing of certiorari application, see U.S. v. Snebe 534 F.3d 87, and as a result, petitioner was deprived of his constitutional right to effective assistance of counsel. 2. On January 01, 2022, the prison was lockdown cause by a riot in the messhall. Petitioner did not have direct access to the law library or legal assistance for three weeks. Prison officials authorized access in the law library was under covid-19 restrictions, (see exhibit B). Petitioner was only allowed access one day per week and requested extension [sic] for datelines was due within the next thirty days from the dateline. 3. Appellate Division did not send notice or order denying leave the appeal of his post-conviction motion enter on March 02, 2023. Petitioner did not learned [sic] of his denial until he received defendant's motion, Kelly v. Diaz 515 F.3d 149, Second Circuit, which included state appellate court decision that was presented as evidence to this court. (See exhibit C). Petitioner acted in filing his notice of appeal to the Court of Appeals after receiving the state court decision in defendant's motion. Colvin v. Favourite 758 Fed. Appx. 68, Second Circuit, (See exhibit D). These issues constituted an extraordinary circumstance that warrant equitable tolling of the one-year limitations period . . .

*Id.* at 1–3. Respondent asserts that the inconsistency in Petitioner's arguments alone casts the veracity of his testimony into doubt.

8

Respondent also challenges Petitioner's testimony that he filed a grievance in April 2022 and, accordingly, his testimony that his motion was not mailed until May 2022 not because of his own failure to place the motion in the mailbox but instead because the prison failed send the package out. Respondent submitted a status list of grievances that Petitioner filed with the Inmate Grievance System at Green Haven Correctional Facility between October 13, 2021 and June 5, 2024. Dkt. No. 37-4. That document showed that Petitioner filed grievances on March 14, 2022 and October 11, 2022 relating to his legal mail, but both grievances pertained to incoming legal mail—no grievances were listed related to outgoing legal mail. *Id*. Respondent also offered evidence that Petitioner filed a grievance on April 28, 2022, Dkt. 39 at 7–8, and a second grievance on October 11, 2022, *id*. at 9–15, thus further demonstrating that he knew how to file grievances and that those grievances were recorded, but that neither related to his outgoing mail. The April 28 grievance (which was logged on May 3, 2022) related to Petitioner being denied recreation. Dkt. No. 39 at 8. Petitioner filed a second grievance on October 11, 2022, in which he complained that his account did not send the amount of funds from his disbursement to a vendor. *Id*. at 11.[7] In his testimony, Petitioner admitted that he did not have a document showing that the Department of Corrections had received his alleged April 2022 grievance. Dkt. No. 45 at 23:10–12.

Two witnesses testified on behalf of Respondent at the continued hearing on September 4, 2024: Patrick McNeil and Laura Stanaway.[8]

---

[7] Petitioner complained that his monthly statement and pink slip reflected a disbursement of $67.73 but the vendor claimed to have only received $61.62. Dkt. No. 45 at 11. The facility determined that the disbursement was made for $67.73 and that Petitioner should inquire with the vendor as the $6.11 may have been deducted for shipping. *Id*. at 13.

[8] Petitioner requested McNeil's testimony, but McNeil was called as a witness by Respondent and cross-examined by Petitioner.

9

McNeil's notary stamp and signature appear on Petitioner's 440.10 motion. Dkt. No. 13-1 at 16. In March 2022, McNeil was employed as a correctional officer by the New York State Department of Correctional Services in the Green Haven Correctional Facility. Dkt. No. 42 at 6:8–10. He was stationed in the law library, serving a shift from 3 p.m. to 11 p.m. *Id.* at 6:12–19, 30:16–19. McNeil interacted with Petitioner (whom he had seen in the law library approximately twice a week) and notarized many documents for Petitioner and others. *Id.* at 7:6–12, 11:8–10. McNeil did not specifically recall notarizing the March 2022 documents. *Id.* at 7:18–21. He explained, however, that his notarization of a documents on a particular date would reflect that the document was signed before him on that date but not necessarily reflect that the document was mailed on that date—after a document was notarized, it would be up to the inmate whether to send the mail. *Id.* at 8:18–9:2. McNeil initially testified that he would not have signed an affidavit, including the affidavit of service, without verifying the statements in it were true, *id.* at 26:10–18, but he later clarified that he only notarized the affidavit of service to verify the signature, not that it was actually was about to be mailed. *Id*. at 31:13–16.

McNeil further explained the procedure for sending legal mail. *Id.* at 8:5–14. An inmate wishing to send mail would have to complete a disbursement form, which he would obtain from the law library officer. *Id.* The inmate would then complete the disbursement form with the address to which the mail was being sent. *Id.* The inmate could then place it in the prison mailbox located by the entrance of the law library. *Id*. at 7:22–8:2.[9] Mail cannot be placed in the mailbox without a disbursement. *Id.* at 21:1–3, 27:25–28:4. While mail is picked up in the morning, the mailbox is open through the evening. *Id.* at 22:9–12, 30:16–22. Although the prison does not log

---

[9] Inmates can determine the price of postage for their mail from a scale located in the law library. There is no weight limit for mail sent from the facility. *Id*. at 28:5–29:7, 33:8–9.

outgoing mail, *id.* at 8:16–17, an inmate wishing to document the date on which an item is mailed can do so by completing a mailing affidavit, having it notarized, and then having the officer accompany the inmate to the mailbox to witness the inmate drop the mail into the mailbox. *Id.* at 9:6–17.

McNeil called into question the veracity of Petitioner's testimony that he mailed the 440.10 motion in March 2022 with a disbursement form only to learn in April that the motion was not mailed for lack of postage. He testified that mail is returned to inmates "from time to time." *Id.* at 9:18–20. No log is kept of mail that is returned without having left the facility, *id.* at 8:15–17, 20:2–7, but when outgoing mail is not sent due to a problem at the prison, the prison returns the mail to the inmate in its entirety along with the disbursement form with red marking explaining the deficiency. *Id.* at 9:21–10:8. If there was not enough money to cover the postage, that would be documented on the returned disbursement form. *Id.* at 10:2–4. The inmate keeps this disbursement form and would need to fill out a new one if they wanted to re-send the mail. *Id.* at 10:15–11:3. McNeil admitted, however, that from time to time the disbursement form is lost, including when it is not properly attached to an envelope. *Id.* at 21:20–24.

McNeil also called into question the truthfulness of Petitioner's testimony with respect to the closure of the law library. Petitioner had stated he was denied access to the law library for three weeks starting January 1, 2022. Dkt. No. 18 at 2. He also testified that he did not have access to the law library from March 16, 2022 until March 21, 2022. Dkt. No. 45 at 4:2–4. But, while McNeil recalled an incident in the mess hall on January 1, 2022, Dkt. No. 42 at 15:22–16:8, he stated that there were no incidents that required shutting down any cell blocks for a prolonged period of time, *id* at 18:17–22. He testified that disturbances in the facility are not enough to shut down the law library, and that while COVID-19 restrictions caused the law library to operate at a

11

lower capacity (approximately 15 people instead of 48), it was not shut down. *Id.* at 11:11–12:3, 12:20–13:9.

Stanaway testified regarding the grievance procedures as Green Haven. Stanaway has been the Grievance Supervisor at Green Haven since 2014. Dkt. No. 42 at 36:10–15. In that role, she is responsible for all paperwork related to the 300–400 grievances the prison receives each month. *Id.* at 36:16–18. Stanway verified that Hearing Exhibit 1 was a list of all grievances filed by Petitioner since 2021. *Id.* at 37:15–17; 38:13–16. She also authenticated the records for the grievances on March 22, 2022, *id.* at 39:20–24, May 3, 2022, *id.* at 40:12–15, and two dated October 11, 2022, *id.* at 41:2–42:7. She confirmed that there was no record of Petitioner ever filing a grievance related to the purported March 21, 2022 mailing deficiency. *Id.* at 44:15–17. Stanaway testified to the ready availability of grievance forms and the rigor exercised by the prison in recording them. She explained that grievance forms are available throughout the facility; incarcerated individuals can take as many as they want, anytime they want, and no one follows up on the blank forms taken by anyone. *Id.* at 44:22–45:11. Individuals may then submit their grievances either loose or in a sealed envelope, *id.* at 47:4–18, and that she or another officer typically pick them up from locked boxes in the mess hall, *id.* at 46:10–17. Grievance forms have a white copy and two color copies, and the individual can keep the color copies and submit the white copy. *Id.* at 56:6–15. Stanaway reviews, logs, and codes every grievance form she receives. *Id.* at 36:24–37:3. She testified that she had never seen Petitioner's April 25 grievance and it had never come to her office.[10] *Id.* at 44:9-16. She testified that it was theoretically possible that a grievance might be lost in transit and therefore not make it to her office, *id.* at 46:20–22, and that

---

[10] Counsel for Respondent referred to this grievance as the "April 23" grievance during the hearing on September 4, 2024. *See* Dkt. No. 42 at 44:10. The Court understands this to be an error.

she has no way of knowing what happens to it if it is lost in transit, *id.* at 55:16–23, but that an inmate can file a grievance if a prior grievance is not addressed, *id.* at 54:19–54:23.  She has had two or three such grievances since 2014.  *Id.* at 55:2–55:4.  These are treated as normal grievances, and the response is to either explain what happened with the grievance if it was received or to say it was never received and direct the submitter to resubmit it if within the 21-day time limit from the event about which the individual is submitting a complaint.  *Id.* at 54:19–55:15; 58: 25–59.  Stanaway testified that she had never seen officers take grievance forms from the box and dispose of them or otherwise not bring them to her office*.  Id.* at 53:24-54:2.

## DISCUSSION

Under the law, a state petition is properly filed when it is "delivered it to prison authorities for mailing."  *Fernandez,* 402 F.3d at 114.  The Petition in this case would be timely if Petitioner had given his 440.10 motion to the prison for mailing on March 21, 2022.  In his original petition, Petitioner claimed he "filed [the] 440.10 motion to state court dated March 21 2022 that would extend the time."  Dkt. No. 2 at 12.  It would not be timely if, notwithstanding when it was completed and dated, it was not delivered to the prison mailbox for mailing until after March 21, 2022.  *See Jefferies v. U.S.*, 748 F.3d 1310, 1314–15 (11th Cir. 2014).

Where an issue of timeliness is raised, a pro se inmate "has the burden to prove that he is entitled to benefit from the mailbox rule and that his pleadings were properly submitted for filing in a timely manner."  *Benitez v. Davis*, 2020 WL 1815865, at *5 (S.D. Tex. Apr. 9, 2020) (citing *United States v. Duran,* 934 F.3d 407, 412 (5th Cir. 2019)).  If the inmate meets that burden, the burden shifts to the state, who may present contradictory evidence. *See Ray v. Clements*, 700 F.3d 993, 995 (7th Cir. 2012)*; see also Houston v. Lack*, 487 U.S. 266, 175 ("[P]rison authorities . . . have well-developed procedures for recording the date and time at which they receive papers for

mailing and . . . can readily dispute a prisoner's assertions that he delivered the paper on a different date.").

Based on its review of all of the evidence in the case and its assessment of the demeanor and credibility of the witnesses, the Court concludes that, regardless of the date on the notice of motion and whether Petitioner originally intended to mail the notice on or before March 21, 2022, he did not deliver the notice until after March 21, 2022. The Court therefore rejects Petitioner's testimony and concludes that the Petition is untimely.

Petitioner did not dispute that his disbursement account was not charged for postage and his 440.10 motion was not mailed from the facility until May 2022. His explanation of why his account was not billed for postage for the 440.10 motion and the motion was not mailed from Green Haven relies on the notion that while he placed the 440.10 motion in the prison mailbox on March 21, 2022, with a disbursement form for proper postage, the prison failed to mail it or charge his account for the value of the postage, and further, that he was not informed of the prison's failure to mail it until he unilaterally raised the issue through two grievances in late April 2022 and then, upon being informed of the prison's purported mistake, placed the 440.10 motion in the prison mailbox a second time.

The only evidence in support of Petitioner's account, however, is his own testimony and the inferences that can be drawn from the notarization of the 440.10 motion on March 21, 2022 and the affidavit of service. There is no independent corroboration for his account. Neither the affidavit of service nor the notarization of the 440.10 motion, however, provide much support for Petitioner's argument. The affidavit of service provides no support for the argument. In the document, Petitioner, having been duly sworn, states that the 440.10 motion was placed in the mail on March 16, 2022. That statement is admittedly and demonstrably false. The 440.10 motion was

14

not completed until March 21, 2022 at the earliest, when it was signed by Petitioner and notarized by McNeil. Petitioner did not just sign the affidavit of service; he also filed it with the state court and served it on the District Attorney's Office. Dkt. No. 13-1 at 14. His submission of a sworn document that he knew to be false undermines his credibility and calls into question the reliability of his sworn testimony.

The notarization of the 440.10 motion on March 21, 2022, provides only weak support for his argument. The fact that Petitioner had the motion notarized on March 21, 2022, suggests that Petitioner was sensitive to that date. It supports an inference that he would have mailed the motion on March 21, 2022, understanding the significance of that deadline. But the inference is not strong. The date reflects only that Petitioner mailed a motion that was dated March 21, 2022; it does not support that the motion was actually mailed on March 21, 2022. McNeil testified that his notarization of the motion on March 21, 2022, did not vouchsafe that the motion was mailed on March 21, 2022. Dkt. No. 42 at 8:18–25; 15:3–8. And, as discussed below, Petitioner's testimony is overcome by the extensive independent evidence that Petitioner did not place the motion with a disbursement form in the prison mailbox on March 21, 2022.

While Petitioner testified that he placed the 440.10 motion in the prison mailbox on March 21, 2022, his testimony is suspect. He submitted a false affidavit of service to the state court and the District Attorney's Office. Dkt. No. 13-1 at 14. He swore that the prison law library was unavailable to him for weeks after January 2022 and from May 16 until May 21, 2022, Dkt. No. 45 at 5:1–4, when the evidence is to the contrary, Dkt. No. 42 at 11:24–12:1, 12:20–13:9; 32:15–28. After Respondents' motion to dismiss, when the issue of timeliness first arose, Petitioner told a different story: that his appellate counsel was ineffective and informed him of the wrong filing deadline. Dkt. No. 18 at 1–2. When it was made clear that appellate counsel did in fact inform of

15

the correct date, Petitioner switched gears and disputed that his motion was untimely. *See* Dkt. No. 23. Only after being confronted with irrefutable evidence that he was not billed for postage and the 440.10 motion was not mailed until May 2022 did Petitioner arrive at the explanation that the document was mailed in May 2022 not due to his own delay but because the prison had failed to effect the mailing, failed to issue a disbursement slip, and then failed to record an April 2022 grievance that he made regarding the aforementioned failures. Petitioner's copy of the purported April 2022 grievance form is signed only by Petitioner and is authenticated only by his testimony. There is no independent evidence that it was created in April 2022 or submitted to the prison. While no one would suggest that prison administrative systems are infallible, Petitioner's explanation, grounded as it is in so many successive and cumulative system failures, is implausible.

The evidence offered by Respondent suggests that Petitioner's story cannot be credited. Respondent has offered evidence of Petitioner's record of grievances. He has made a number of grievances and they have been documented. There were grievances in March and April 2022, Dkt. No. 37-4; Dkt. No. 39 at 7–8; the grievance related to the outgoing mail is not one of them, Dkt. No. 42 at 39:5–40:24. There are no grievances related to outgoing mail. Grievance forms are readily available throughout Green Haven. Petitioner could easily have taken one of those forms when confronted with Respondent's argument, included in it the account that he did not receive a pink slip, and then backdated it to April 2022. There is no reason to believe otherwise.

Moreover, the uncontradicted evidence at the hearing demonstrated that Petitioner would not have had to make a grievance. If he had submitted a motion for mailing in March 2022 and that motion did not leave the prison facility, the mail would have been returned to him with a copy of the disbursement form indicating the reasons why it was not mailed. There would have been no reason to make a grievance and thus to generate a grievance form. But Petitioner was not able

16

to produce a copy of a disbursement form that was returned to him because, the Court concludes, the 440.10 motion was not submitted for mailing in March 2022. It was submitted for mailing for the first time in May 2022. He generated the grievance form because he had no March 2022 disbursement to produce.

The absence of evidence where such evidence would be expected further refutes Petitioner's account. Petitioner would have had a copy of a disbursement form from March 2022 if he had completed such a form. Dkt. No. 42 at 9:24–10:1, 10:21–11:3, 29:21–30:4. He did not. He could have completed a separate mailing affidavit on March 21, signifying that he did in fact place the motion into the mail that day, but he did not. *Id.* at 9:6–17. There could have even been an affidavit of service from March 21, 2022, if on March 21, 2022 he had the intent to have mailed the 440.10 motion. There is not. Had he submitted two grievances in April 2022 related to outgoing legal mail, as he has alleged, there would have been a record of at least one. There is not.

In the end, Petitioner asks the Court to believe that notwithstanding the absence of any prison records reflecting a disbursement from his accounts for postage in March 2022, any disbursement form from March 2022, or any record of a grievance received by the prison in April 2022, he submitted the 440.10 motion for mailing in March 2022 and the prison just failed to mail it. He also asks the Court to infer that the prison, having failed to mail the 440.10 motion in March 2022, suddenly was able to mail it in May 2022. The more logical inference and the one that the Court draws is that Petitioner simply failed to mail the Petition on or before March 21, 2022. The prison did not fail to mail the Petition in March 2022 because it was not submitted to the prison for mailing in March 2022. It did not bill Petitioner's prison account for postage in March 2022 because Petitioner did not request postage in March 2022. The prison did not just suddenly lose

17

the disbursement form or records of grievances. There was no record of them because there was no March 2022 disbursement form or April 2022 grievance for outgoing legal mail.

In his supplemental briefing, Petitioner claims that he is entitled to equitable tolling of the one-year statute of limitations because appellate counsel was ineffective in informing him that his deadline was March 21, 2022; Petitioner claims this date is incorrect. Dkt. No. 53 at 1. Petitioner claims that counsel "deceive[d] or lie[d]" to him, which amounted to "extraordinary circumstances" that prevented him from filing in accordance with the deadline. Dkt. No. 53 at 4–5. But there is no basis for such an assertion, because appellate counsel gave Petitioner the correct information.

Generally speaking, a petition for a writ of certiorari must be filed within 90 days after entry of an order denying discretionary review. *See* Sup. Ct. R. 13.1. In light of the COVID-19 pandemic, in March 2020, the Supreme Court extended that window to be 150 days rather than 90. *See* Miscellaneous Order, 589 U.S. __ (March 19, 2020). Therefore, from October 22, 2020, the date the New York Court of Appeals denied Petitioner leave to appeal, Petitioner had 150 days to file a certiorari petition, meaning, he had until March 21, 2021. Once that time had passed, his conviction became final, and he had one year to bring a habeas petition. 28 U.S.C. § 2244(d)(1)(A). The one-year time limit is tolled when petitioners seek post-conviction relief or other collateral review in state court. U.S.C. § 2244(d)(2).

This is exactly what appellate counsel told Petitioner on at least two occasions—on March 28, 2021 and December 21, 2021. *See* Dkt. No. 18 at 5–6. Petitioner had just under a year to bring the habeas petition and was on notice that a 440.10 petition would "stop the clock." *Id.* Even if appellate counsel had made a calculation error—which he did not—"miscalculating a deadline is the sort of garden variety attorney error that cannot on its own rise to the level of extraordinary

18

circumstances" that would warrant equitable tolling. *Dillon v. Conway*, 642 F.3d 358, 364 (2d Cir. 2011).

## CONCLUSION

The motion to dismiss is GRANTED.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of Court is respectfully directed to close Dkt. No. 13.

SO ORDERED.

Dated: July 2, 2025
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge